UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES )<br>)<br>v.       )<br>)<br>RONALD KENNETH MILSTREED,    )<br>)<br>Defendant.    )<br>) | Case No. 1:22-cr-198-JEB |

## DEFENDANT'S OPPOSITION TO APPEAL OF RELEASE ORDER AND PROPOSED BRIEFING SCHEDULE[1]

### INTRODUCTION

Rodney Milstreed, by and through undersigned counsel, respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3142 and 18 U.S.C. § 1345, to affirm his release pending trial in this matter, in accordance with the release conditions ordered by Magistrate Judge Michael E. Hegarty in the District Court of Colorado, where Mr. Milstreed was first arrested.[2]

Mr. Milstreed is before this Court charged by Indictment with: 1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 2) Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; 3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); 4) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1)

---

[1] Counsel has consulted with government counsel, who can file a reply to this pleading on June 22, 2022. The parties are available to conduct a hearing on this motion on the afternoon of June 23, 2022.

[2] *See D. Co. Case No.* 22-mj-93, ECF 10, attached as Exhibit A.

1

and (b); 5) Assault by Striking, Beating, and Wounding within the Territorial Jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(4); 6) Simple Assault within the Territorial Jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(5); 7) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(1) and (b)(l)(A); 8) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(l)(A); 9) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ l752(a)(4) and (b)(1)(A); 10) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C § 5104(e)(2)(D); and 11) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

On May 24, 2022, nearly seventeen (17) months since the events of January 6, 2021, Mr. Milstreed was arrested in this matter in the District of Colorado on an arrest warrant issued from the District of Columbia. A detention hearing was held on May 27, 2022, during which Magistrate Judge Michael Hegarty denied the government's request for detention and issued an order releasing Mr. Milstreed with certain conditions. *Id*. A transcript of the detention hearing is attached as Exhibit B.

As detailed in the Judge Hegarty's order and below, Mr. Milstreed is not a flight risk, is not a danger to the community, and there are conditions or combinations thereof that can effectively ensure the safety of the community. *See* Exhibit A.

**LAW AND ARGUMENT**

In a recent decision by Chief Judge Howell in *United States v. Chrestman*, this Court outlined the following as it relates to the standard of review applicable in a government's appeal of a magistrate judge's release order. *See* 525 F. Supp. 3d 14, 23 (D.D.C. 2021). The opinion states:

> If a defendant is ordered released under § 3142 by a judicial officer, including "by a magistrate judge," the BRA allows the government to "file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release," which motion must be resolved "promptly." 18 U.S.C. § 3145(a); *see also id.* § 3145(b) (providing the same right of review to a defendant who is ordered detained by a magistrate judge or other judicial officer). Neither § 3142 nor § 3145 specifies the standard of review to be applied by a district court reviewing a magistrate judge's release or detention order, and "the D.C. Circuit has not yet addressed the issue." United States v. Hunt, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017). Nonetheless, both the BRA and the Federal Magistrates Act, 28 U.S.C. § 636, support the conclusion, reached by every circuit to have considered the question, that a district court reviews a magistrate judge's release or detention order *de novo. Id.*

Thus we look to the original factors to be considered under the Bail Reform Act ("BRA"), 18 U.S.C. § 3141 et seq., which states that a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, in our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the government requests pretrial detention, specific requirements must be fulfilled before a defendant may be detained. In order to warrant an exception to this presumption of freedom, the government is required to demonstrate the appropriateness of pretrial detention by clear and convincing evidence. 18 U.S.C. § 3142(f). Additionally, the judicial officer considering the propriety of pretrial detention must consider

four factors: (1) [t]he nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Court has recently expanded on the fourth factor listed above – the danger to the community – in the context of the January 6th cases. Specifically, the D.C. Circuit held that: "[t]o order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence, and may extend to non-physical harms such as corrupting a union. But it must be clearly identified." *Munchel v. United States*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) (citation and internal quotations omitted).[3]

Mr. Milstreed is fifty-six (56) years old, is gainfully employed, has a minimal criminal history involving petty theft and an arrest for an alleged drug offense from decades ago,[4] but absolutely no history of violence, and over the last seventeen (17) months since the events of

---

[3] In *Munchel*, the Circuit did not find that the government had sufficient evidence of dangerousness where the defendants went to the January 6th rally with tactical vests, a stun gun and at least a pocketknife. *Munchel*, 991 F.3d at 1276. They met with members of the Oath Keepers militia and bragged about "enter[ing] the building with armor and f_ing weapons." *Id*. Once inside, they gathered zip ties and went to the Senate gallery. *Id*. By contrast, Mr. Milstreed is alleged to have brought a flagpole to the Capitol and it is not alleged that he met with any militia members. Moreover, he never went inside the Capitol, unlike the defendants in *Muenchel*.

[4] Counsel's review of Maryland online case records reveals a matter initiated on April 15, 1987 alleging a drug offense. There is no disposition indicated and it is highly unlikely that non-digital records of a thirty-five year old matter exist.

4

January 6, 2021, has not engaged in any conduct that would give the Court pause in terms of his dangerousness or inability to comply with pretrial release conditions.

The government in their motion to stay tries to paint a picture of a man with a plan who came to the District on January 6, 2021, with a specific intent to be violent. *See* ECF 5. The government then claims that Mr. Milstreed followed through with that plan and was indeed violent. *Id.* The government's supplemental filing is filled with Facebook messages, photos of weapons and ammunition, and photos of alleged steroids, much of which are superfluous to the actual charges he is facing. *See* ECF 8. The alleged violent conduct in this case consists of throwing an item used as a flagpole towards law enforcement which did not result in any injury, picking up a smoke grenade that was thrown directly in his vicinity and throwing it back in the direction it came from, and pulling an alleged member of the press down a couple of stairs. *See* ECF 5.

While Mr. Milstreed's alleged conduct is problematic, it is far less egregious than many other individuals who have been charged for their conduct on January 6, 2021, and more importantly, whom have been released pending trial.

The government also makes the argument that because the evidence is so overwhelming against Mr. Milstreed, that it logically follows that Mr. Milstreed is a danger and must be held pretrial. While the Court must consider this factor, this is a pretrial detention matter whereby his guilt or innocence is not before the Court. The government cites to statements made before and after the events whereby Mr. Milstreed allegedly brags about his violent conduct. *See* ECF 5 at 35. Even if the Court were to assume that all of the government's allegations are true, this factor does not bear on the question of whether he is a danger to the community. In fact, despite all of the inflammatory language, rhetoric, threats, alleged intent to do violence, and photos of

weapons and ammunition, Mr. Milstreed is not alleged to have come to Washington, DC with any firearms, ammunition, or other gear to engage in a "civil war" as the government contends. *Id*. at 7. And in fact, his hyperbolic language on social media ceased around January 10, 2021. *See* Exhibit B, p. 28, ¶ 25. Mr. Milstreed's words and actions are much more akin to bravado than actual danger. In fact, the government concedes that Mr. Milstreed has absolutely no history of violence. *Id.*, p. 22, ¶¶ 22-23.

As Judge Hegarty outlined in his order, Mr. Milstreed's history and characteristics strongly favor release. *See* Exhibit A, at 4. Mr. Milstreed has a steady history of employment as a machinist, a stable family life, a stable residence, and stable financial conditions. *Id.* Attached as Exhibits C, D, and E are letters of support from Mr. Milstreed's father, girlfriend, and current boss. They all describe Mr. Milstreed as a respectful, hard-working, caring, and contributing member to society and especially his elderly father. *Id*. In commenting on Mr. Milstreed's history and characteristics, the government makes the argument that "it is clear that pretrial custody is the only way to ensure he does not strike again." *See* ECF 5 at 36. This argument is without merit because the evidence is completely to the contrary.

In the last seventeen (17) months since January 6, 2021, Mr. Milstreed is not alleged to have engaged in any activity, whether online or otherwise, that would constitute him being a danger to the community in any way. *See* Exhibit B, p. 18, ¶¶ 2-9. The government claims that his firearms collection is troubling, yet again, it is not alleged that Mr. Milstreed brought these weapons to the Capitol on January 6, 2021. *See* Exhibit B, p. 11, ¶¶ 7-17. The government further contends that Mr. Milstreed has a substance abuse problem, and even if the Court assumes this to be true, it bears no weight as to the dangerousness of Mr. Milstreed in a detention hearing. The Court can impose a condition of not only drug testing but can order Mr. Milstreed

6

to undergo a substance abuse evaluation and to follow all recommendations of treatment while on pretrial supervision. Thus, a condition exists that can alleviate any concern in this regard.

As it relates to the fourth factor listed in the BRA – the nature and seriousness of the danger posed by release, the government again cites to alleged inflammatory language by Mr. Milstreed, and tries to correlate it to him possessing weapons and ammunition. *See* ECF 5 at 38. This argument has no merit because as already mentioned, even if assumed true, these statements were nothing more than hyperbole because Mr. Milstreed did not bring these alleged weapons or ammunition to Washington, D.C. on January 6, 2021, and did not engage with any militia groups to impose "martial law," as the government contends. A number of conditions including GPS monitoring and a third-party custodian can be imposed so as to assure the Court that Mr. Milstreed could not gain access to any weapons while on pretrial supervision.

More specifically, per the Court's findings in *Munchel*, there is no "articulable threat" posed by Mr. Milstreed. In fact, when asked by the Court in the initial detention hearing: "is there a proffer as to anything he's done against the law or of a threatening nature during that time period?" referencing the past seventeen (17) months, the government's response was: "…the answer is I'm not aware of anything, and the agent I just talked to said she was not aware of anything. So the answer would be no." *See* Exhibit B, p. 18, ¶¶ 2-9. Per *Munchel*, this Court must consider the specific circumstances that made the defendant's dangerous conduct possible. *Munchell* at 1283. ("The District Court also failed to demonstrate that it considered the specific circumstances that made it possible, on January 6, for Munchel and Eisenhart to threaten the peaceful transfer of power. The appellants had a unique opportunity to obstruct democracy on January 6…."). Thus, if this Court follows the directive to "consider [the threat] in context," "it

7

follows that whether a defendant poses a particular threat depends on the threat identified and the resources and capabilities of the defendant."

Mr. Milstreed does not pose a particular danger because he will not have the opportunity, capability, or resources to be a threat to democracy or to the Capitol Police. His limited participation was fully bounded by the scope of the January 6th events. Taken as a whole, the Government has not shown "by clear and convincing evidence that Mr. Milstreed presents an identified and articulable threat to an individual or the community [so that] a court may disable the arrestee from executing that threat." *Id*. at 1282 (quoting *Salerno*, 481 U.S. at 751). The record does not support a finding, by clear and convincing evidence, that Mr. Milstreed presents an articulable threat. To the extent that there is any evidence that Mr. Milstreed is a threat (and counsel maintains that there is not), the Court can fashion a combination of conditions that would reasonably assure the Court that he is not.

To continue Mr. Milstreed's incarceration would also create inconsistencies with other January 6th defendants accused of arguably greater misconduct who have been granted release. For example:

- *United States v. Richard Barnett*, 1:21-cr-38-CRC, Barnett entered the Capitol building armed with a stun gun, brazenly sat at Speaker Pelosi's desk and posed for photos. He is also alleged to have stolen an envelope from the Speaker's office. *See* ECF 3 (Amended Complaint and Statement of Facts). Barnett is charged with, *inter alia*, knowingly entering and remaining in any restricted building without lawful authority while armed with a dangerous weapon, in violation of 18 U.S.C. §1752. On April 27, 2021, Judge Cooper granted his motion for reconsideration of bail and ordered him released into the High Intensity Supervision Program. *See* Dkt. No. 29.

- *United States v. Robert Sanford*, 1:21-cr-52-ZMF, Sanford is alleged to have hurled a fire extinguisher into a crowd of police officers and striking at least three officers in the head. Video footage allegedly captures Sanford screaming "traitors" and "cowards" at the officers. *See* ECF 10 (Government's Opposition to Defendant's Motion to Reconsider Detention). Like Mr. Milstreed, Sanford is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). Yet on March 2, 2021, Judge Friedman granted Sanford's motion for release and placed him on GPS monitoring. ECF 11.

- *United States v. David Alan Blair*, 1:21-cr-86-CRC, Blair was captured on body worn camera brandishing a lacrosse stick which served as a pole for a large confederate flag. *See* ECF 1 (Complaint and Statement of Facts). While walking back and forth between the crowd and police officers, Blair is alleged to have exhorted, "hell naw, quit backing up, don't be scared. . .". As an officer advanced, Blair yelled at the officer: "what's up motherfucker, what's up, what's up bitch." *Id*. He then struck the officer in the chest with the lacrosse stick and had to be forcibly restrained by multiple officers *Id.* Notwithstanding this direct physical assault with a lacrosse stick, Blair was ordered released with conditions. ECF 6. Like Mr. Milstreed, Blair is charged with, *inter alia*, assaulting police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Michael Foy*, 1:21-cr-108-TSC, Foy was captured on publicly available video brandishing a hockey stick and swinging it multiple times at an officer on the ground. *See* ECF 1 (Complaint and Statement of Facts). Foy is later seen exhorting the crowd to enter the Capitol, then crawling into the Capitol building

9

through a broken window. *Id.* Like Mr. Milstreed, Foy is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Clayton Ray Mullins,* 1:21-cr-35-EGS, Mullins was captured on publicly available video and body worn camera pulling an officer into the crowd of rioters, away from a group of officers defending the Capitol. *See* ECF 1 (Complaint and Statement of Facts). Like Mr. Milstreed, Mr. Mullins is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

- *United States v. Grady Douglas Owens*, 1:21-cr-286-BAH, Owens allegedly struck a law enforcement officer with a skateboard, struggled against officers to enter the Capitol, and incited others around him to do the same. *See* ECF 14 (Government Response to Defendant's Motion to Revoke Detention Order). Like Mr. Milstreed, Mr. Owens is charged with, *inter alia*, assaulting a police officer using a dangerous weapon, in violation of 18. U.S.C §§ 111(a)(1) and (b).

- *United States v. Russell Taylor*, 1:21-cr-392-RCL-2, Taylor allegedly fought back a line officers defending the Capitol and advanced to the Upper West Terrace where he celebrated with co-conspirators. *See* ECF 11 (Government Motion for Revocation of Release Order). Taylor was armed with a knife and was wearing a tactical vest on January 6. *Id.* Prior to January 6, Russell started and participated in a Telegram chat group, purportedly for the specific purpose of organizing a group of "fighters" to travel from California to Washington, D.C. to disrupt the peaceful transfer of power on January 6. *Id.*

- *United States v. Matthew Beddingfield*, 1:22-cr-0066-CJN-1 the defendant was released into the custody of a third-party custodian over the government's objection. Mr. Beddingfield's criminal history is far more serious than that of Mr. Milstreed. As well, the conduct alleged to have been committed by Mr. Beddingfield on January 6, 2021 is more serious than that with which Mr. Milstreed has been accused.

    As of January 6, 2021, Mr. Beddingfield was released on bail in Johnston County, North Carolina. At the time he was charged with attempted murder for shooting a 17-year-old young man in December 2019. One of his conditions of release was a curfew from 6:00 PM – 6:00 AM. Mr. Beddingfield subsequently pled guilty to felonious assault with a deadly weapon with intent to kill or inflicting serious injury and received a sentence of twenty-four months of probation. On January 28, 2022, less than two weeks before his arrest in his U.S. District Court matter, Mr. Beddingfield was arrested on allegations of reckless driving – driving approximately 110 m.p.h. on a highway where the posted speed limit was 65 m.p.h.

    On January 6, 2021, apparently in violation of his curfew, Mr. Beddingfield had traveled to Washington, DC from North Carolina. At 12:57 PM, he jumped a barricade on the West Plaza of the Capitol. ECF 1 at 9. At approximately 1:06 PM, he attacked USCP officers, jabbing at them with a metal flagpole he had brought with him. He then made a Nazi salute while facing the Capitol. At about 2:30 PM, Mr. Beddingfield entered the Capitol, attempted to storm the Senate Wing, and appeared to use his flagpole to assault or attempt to assault officers outside the Old Senate Chamber. *Id.* at 26.

Both Mr. Milstreed's criminal history and alleged actions on January 6, 2021 are in stark contrast to that of Mr. Beddingfield.

The reasoning in Judge Hegarty's release order is straight forward. *See* Exhibit A. The Court opined that it cannot compare the nature and circumstances of the offense to any other event. Arguably, this is why it is so important to put Mr. Milstreed's conduct in context and compare the above cited examples where release was granted. Second, the Court found that the weight of the evidence against Mr. Milstreed weighed in favor of detention, but it was outweighed by the third and fourth factors in that Mr. Milstreed's criminal history is "unremarkable," that he has "no incidents of any kind in the record after January 6, 2021 … [which] favors conditions of release and belie his prior statements of "revolution." *Id*. Additionally, Mr. Milstreed has no history of disobeying court orders, is in good health, and has expressed regret for his actions. *Id*; *see also* Exhibit B, p. 31, ¶¶ 4-13.

In considering the above factors, Mr. Milstreed is not a flight risk, is not a danger to the community, and there are conditions or combinations thereof that can effectively ensure the safety of the community. Mr. Milstreed respectfully requests that this Court affirm Judge Hegarty's order of release pending trial with all relevant conditions.

    Respectfully submitted,

    _____s/_____
    David Benowitz
    Bar # 451557
    *Counsel for Rodney Milstreed*
    Price Benowitz LLP
    409 Seventh Street, NW
    Suite 200
    Washington, DC  20004
    (202) 271-5249
    david@pricebenowitz.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June 2022, a copy of the foregoing Opposition to Appeal of Release Order was served on all parties via the CM/ECF system.

_____/s/_____
David Benowitz